UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

NICHOLAS M. HIGHSMITH,

               Petitioner,

v.                                    Case No. 3:13-cv-619-J-34JRK

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

               Respondents.

_____

## ORDER

## I. Status

Petitioner Nicholas M. Highsmith, an inmate of the Florida penal system, initiated this action on May 28, 2013, by filing a pro se Petition for Writ of Habeas Corpus (Petition; Doc. 1) under 28 U.S.C. § 2254. In the Petition, Highsmith challenges a 2011 state court (Duval County, Florida) judgment of conviction for aggravated battery. Respondents have submitted a memorandum in opposition to the Petition. See Respondents' Answer in Response to Order to Show Cause and Petition for Writ of Habeas Corpus (Response; Doc. 10) with exhibits (Resp. Ex.). On November 12, 2013, the Court entered an Order to Show Cause and Notice to Petitioner (Doc. 7), admonishing Highsmith regarding his obligations and giving Highsmith a time frame in which to submit a

reply. Highsmith submitted a brief in reply. <u>See</u> Petitioner's Reply to Respondents' Answer to Petitioner's Order to Show Cause and Petition for Writ of Habeas Corpus (Reply; Doc. 12). This case is ripe for review.

## II. Procedural History

On April 5, 2011, the State of Florida, in Case No. 2010-CF-7868, charged Highsmith with attempted first degree felony murder (count one), sexual battery (count two), robbery (count three) and aggravated battery (count four). Resp. Ex. C at 26, Amended Information. In April 2011, Highsmith proceeded to trial, <u>see</u> Resp. Ex. D, Transcript of the Jury Trial (Tr.), at the conclusion of which, on April 14, 2011, a jury found him not guilty on counts one and two, and guilty of theft, a lesser-included offense of robbery (count three), and aggravated battery (count four), as charged. <u>Id.</u> at 476; Resp. Ex. 30-33, Verdicts. On May 11, 2011, the court sentenced Highsmith to a term of imprisonment of fifteen years on count four, and a term of imprisonment of sixty days on count three. <u>Id.</u> at 282-87, Judgment.

On direct appeal, Highsmith, with the benefit of counsel, filed an initial brief, arguing that the circuit court erred when it denied his motion for judgment of acquittal because there was insufficient evidence to establish that Highsmith was the person who committed the aggravated battery; the victim did not testify at trial; and the deoxyribonucleic acid (DNA) evidence established

contact between Highsmith and the victim, but did not prove that Highsmith beat the victim. Resp. Ex. F. The State filed an answer brief, <u>see</u> Resp. Ex. G, and Highsmith filed a reply brief, <u>see</u> Resp. Ex. H. On July 11, 2012, the appellate court affirmed Highsmith's conviction per curiam, <u>see</u> <u>Highsmith v. State</u>, 91 So.3d 137 (Fla. 1st DCA 2012); Resp. Ex. I, and the mandate issued on July 27, 2012, <u>see</u> Resp. Ex. J.

### III. One-Year Limitations Period

The Petition appears to be timely filed within the one-year limitations period. <u>See</u> 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. <u>See</u> <u>Chavez v. Sec'y, Fla. Dep't of Corr.</u>, 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007); <u>Jones v. Sec'y, Fla. Dep't of Corr.</u>, No. 13-15053, 2016 WL 4474677, at *14 (11th Cir. Aug. 25, 2016). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." <u>Schriro</u>, 550 U.S. at 474. The pertinent facts of this

case are fully developed in the record before the Court. Because this Court can "adequately assess [Highsmith's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

### V. Standard of Review

The Court will analyze Highsmith's claims under 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Section 2254(d) states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Thus, 28 U.S.C. § 2254(d) "bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." Harrington v. Richter, 562 U.S. 86, 98 (2011). As the United States Supreme Court stated, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt

v. Titlow, 134 S.Ct. 10, 16 (2013). This standard of review is described as follows:

> Under AEDPA, when the state court has adjudicated the petitioner's claim on the merits, a federal court may not grant habeas relief unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," id. § 2254(d)(2). "Under § 2254(d)(1)'s 'contrary to' clause, we grant relief only 'if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts.'" Jones v. GDCP Warden, 753 F.3d 1171, 1182 (11th Cir. 2014) (quoting Williams v. Taylor, 529 U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). "Under § 2254(d)(1)'s 'unreasonable application' clause, we grant relief only 'if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" Id. (quoting Williams, 529 U.S. at 413, 120 S.Ct. 1495).
>
> For § 2254(d), clearly established federal law includes only the holdings of the Supreme Court – not Supreme Court dicta, nor the opinions of this Court. White v. Woodall,-U.S. -, 134 S.Ct. 1697, 1702, 188 L.Ed.2d 698 (2014). To clear the § 2254(d) hurdle, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 131 S.Ct. 770, 786-87, 178 L.Ed.2d 624 (2011). "[A]n

'unreasonable application of' [Supreme Court] holdings must be 'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." <u>Woodall</u>, 134 S.Ct. at 1702 (quoting <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75-76, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003)). A state court need not cite or even be aware of Supreme Court cases "so long as neither the reasoning nor the result of the state-court decision contradicts them." <u>Early v. Packer</u>, 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002); <u>accord</u> <u>Richter</u>, 131 S.Ct. at 784.

"AEDPA thus imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." <u>Renico v. Lett</u>, 559 U.S. 766, 773, 130 S.Ct. 1855, 176 L.Ed.2d 678 (2010) (citations and internal quotation marks omitted). And when a claim implicates both AEDPA and <u>Strickland</u>, our review is doubly deferential. <u>Richter</u>, 131 S.Ct. at 788 ("The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." (citations and internal quotation marks omitted)). [A petitioner] must establish that no fairminded jurist would have reached the Florida court's conclusion. <u>See</u> <u>Richter</u>, 131 S.Ct. at 786-87; <u>Holsey v. Warden, Ga. Diagnostic Prison</u>, 694 F.3d 1230, 1257-58 (11th Cir. 2012). "If this standard is difficult to meet, that is because it was meant to be." <u>Richter</u>, 131 S.Ct. at 786....

<u>Taylor v. Sec'y, Fla. Dep't of Corr.</u>, 760 F.3d 1284, 1293-94 (11th Cir. 2014), <u>cert</u>. <u>denied</u>, 135 S.Ct. 2323 (2015); <u>see also</u> <u>Hittson v. GDCP Warden</u>, 759 F.3d 1210, 1230 (11th Cir. 2014), <u>cert</u>. <u>denied</u>, 135 S.Ct. 2126 (2015).

For a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus

review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling. <u>Hittson</u>, 759 F.3d at 1232 ("[T]here is no AEDPA requirement that a state court explain its reasons for rejecting a claim[.]"); <u>see</u> <u>Richter</u>, 562 U.S. at 100 (holding and reconfirming that "§ 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits'"). Recently, the Eleventh Circuit instructed:

> Under section 2254(d), a federal court reviewing the judgment of a state court must first identify the last adjudication on the merits. It does not matter whether that adjudication provided a reasoned opinion because section 2254(d) "refers only to 'a decision'" and does not "requir[e] a statement of reasons." <u>Id.</u> at 98, 131 S.Ct. 770.[1] The federal court then must review that decision deferentially.

<u>Wilson v. Warden, Ga. Diagnostic Prison</u>, No. 14-10681, 2016 WL 4440381, at *6 (11th Cir. Aug. 23, 2016) (en banc). Once the federal court has identified the last adjudication on the merits, it must review that decision under the deferential standard of section 2254(d). <u>Id.</u>

> When the last adjudication on the merits provides no reasoned opinion, federal courts review that decision using the test announced in <u>Richter</u>. In <u>Richter</u>, . . . the Supreme Court of the United States ruled that, "[w]here a state court's decision is unaccompanied by an explanation," a petitioner's burden under section 2254(d) is

---

[1] <u>Harrington v. Richter</u>, 562 U.S. 86, 98 (2011).

> to "show[] there was no reasonable basis for
> the state court to deny relief." <u>Id.</u> at 98,
> 131 S.Ct. 770. "[A] habeas court must
> determine what arguments or theories supported
> or, as here, could have supported, the state
> court's decision; and then it must ask whether
> it is possible fairminded jurists could
> disagree that those arguments or theories are
> inconsistent with the holding in a prior
> decision of [the] Court." <u>Id.</u> at 102; 131
> S.Ct. 770....

<u>Id.</u> at *5.

As such, the Eleventh Circuit instructed that "federal courts should not . . . assume that the summary affirmances of state appellate courts adopt the reasoning of the court below." <u>Id.</u> at *7. Nevertheless, when assessing whether there "was no reasonable basis for the state court to deny relief," <u>Richter</u>, 562 U.S. at 98, "a federal habeas court may look to a previous opinion as one example of a reasonable application of law or determination of fact." <u>Wilson</u>, 2016 WL 4440381, at *9. The Eleventh Circuit explained the role of the state trial court's reasoned opinion under these circumstances as follows:

> When the reasoning of the state trial court
> was reasonable, there is necessarily at least
> one reasonable basis on which the state
> supreme court could have denied relief and our
> inquiry ends. In this way, federal courts can
> use previous opinions as evidence that the
> relevant state court decision under review is
> reasonable. But the relevant state court
> decision for federal habeas review remains the
> last adjudication on the merits, and federal
> courts are not limited to assessing the
> reasoning of the lower court.

8

_Id._ Thus, to the extent that Highsmith's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

## VI. Exhaustion/Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. _See_ 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. _Castille v. Peoples_, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." _O'Sullivan v. Boerckel_, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'"opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" _Duncan v. Henry_, 513 U.S. 364, 365, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting _Picard v. Connor_, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must

> "fairly present" his claim in each appropriate
> state court (including a state supreme court
> with powers of discretionary review), thereby
> alerting that court to the federal nature of
> the claim. Duncan, supra, at 365-366, 115
> S.Ct. 887; O'Sullivan v. Boerckel, 526 U.S.
> 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1
> (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state
remedies results in a procedural default which raises a potential
bar to federal habeas review. The United States Supreme Court has
explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the
> constitutionality of a state prisoner's
> conviction and sentence are guided by rules
> designed to ensure that state-court judgments
> are accorded the finality and respect
> necessary to preserve the integrity of legal
> proceedings within our system of federalism.
> These rules include the doctrine of procedural
> default, under which a federal court will not
> review the merits of claims, including
> constitutional claims, that a state court
> declined to hear because the prisoner failed
> to abide by a state procedural rule. See,
> e.g., Coleman,[2] supra, at 747-748, 111 S.Ct.
> 2546; Sykes,[3] supra, at 84-85, 97 S.Ct. 2497.
> A state court's invocation of a procedural
> rule to deny a prisoner's claims precludes
> federal review of the claims if, among other
> requisites, the state procedural rule is a
> nonfederal ground adequate to support the
> judgment and the rule is firmly established
> and consistently followed. See, e.g., Walker
> v. Martin, 562 U.S. --, --, 131 S.Ct. 1120,
> 1127-1128, 179 L.Ed.2d 62 (2011); Beard v.

---

[2] Coleman v. Thompson, 501 U.S. 722 (1991).

[3] Wainwright v. Sykes, 433 U.S. 72 (1977).

> Kindler, 558 U.S. --, --, 130 S.Ct. 612,
> 617–618, 175 L.Ed.2d 417 (2009). The doctrine
> barring procedurally defaulted claims from
> being heard is not without exceptions. A
> prisoner may obtain federal review of a
> defaulted claim by showing cause for the
> default and prejudice from a violation of
> federal law. See Coleman, 501 U.S., at 750,
> 111 S.Ct. 2546.

Martinez v. Ryan, 132 S.Ct. 1309, 1316 (2012). Thus, procedural

defaults may be excused under certain circumstances.

Notwithstanding that a claim has been procedurally defaulted, a

federal court may still consider the claim if a state habeas

petitioner can show either (1) cause for and actual prejudice from

the default; or (2) a fundamental miscarriage of justice. Maples v.

Thomas, 132 S.Ct. 912, 922 (2012) (citations omitted); In Re Davis,

565 F.3d 810, 821 (11th Cir. 2009) (citation omitted). In order for

Petitioner to establish cause,

> the procedural default "must result from some
> objective factor external to the defense that
> prevented [him] from raising the claim and
> which cannot be fairly attributable to his own
> conduct." McCoy v. Newsome, 953 F.2d 1252,
> 1258 (11th Cir. 1992) (quoting Carrier, 477
> U.S. at 488, 106 S.Ct. 2639). Under the
> prejudice prong, [a petitioner] must show that
> "the errors at trial actually and
> substantially disadvantaged his defense so
> that he was denied fundamental fairness." Id.
> at 1261 (quoting Carrier, 477 U.S. at 494, 106
> S.Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a

petitioner may receive consideration on the merits of a

11

procedurally defaulted claim if he can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Carrier, 477 U.S. at 496, 106 S.Ct. at 2649.[4] "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

Ward, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderson v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

---

[4] Murray v. Carrier, 477 U.S. 478 (1986).

12

## VII. Findings of Fact and Conclusions of Law

### A. Ground One

As ground one, Highsmith asserts that the State's evidence was insufficient to prove beyond a reasonable doubt that he committed the aggravated battery. He explains:

> A crime of aggravated battery must meet key elements to support a conviction. Petitioner asserts first that at the time of the crime the victim gave the description of a middle aged white male in a red Porsche. The Petitioner however at the time was a 20 year old African American. The Petitioner further states that during the entire investigation (14 months trial included) the victim never identified the petitioner as the person who attacked her. Petitioner asserts that there weren't any eyewitnesses or witnesses that could attest at anytime during this investigation that the petitioner battered the victim. Petitioner asserts that the presence of his unidentified DNA (i.e. blood, saliva, etc.) established contact with the victim and does not support a conviction of aggravated battery as explained in the jury instructions. The Petitioner testified that this contact was amorous[.] [T]his same amorous contact was witnessed by both state & defensive [sic] witnesses at trial. [The] State also failed to prove to [the] jury that petitioner used a weapon. In turn not proving the crime of aggravated battery.

Petition at 5. Respondents argue that Highsmith did not present this claim as a federal due process violation on direct appeal, and thus Highsmith's federal due process claim has not been exhausted and therefore is procedurally barred. See Response at 5-8. In the Petition, Highsmith states:

> Ground One was not raised on Petitioner's
> direct appeal because Petitioner was not
> involved in the writing of his direct appeal.
> Petitioner could not further exhaust his state
> remedies due to the death of his counsel.[5]
> However some of Petitioner's supporting facts
> were included in his direct appeal.

Petition at 5. On this record, the Court agrees that the federal due process claim has not been exhausted and is therefore procedurally barred since Highsmith failed to raise the claim in a procedurally correct manner. Highsmith has not shown either cause excusing the default or actual prejudice resulting from the bar. Moreover, he has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception.

Even assuming that Highsmith's claim is not procedurally barred, Highsmith is not entitled to relief. As previously stated, Highsmith argued this issue on direct appeal, see Resp. Exs. F; H; the State filed an Answer Brief, see Resp. Ex. G, and the appellate court affirmed Highsmith's conviction and sentence per curiam without a written opinion as to this issue, see Highsmith, 91 So.3d 137; Resp. Ex. I.

In its appellate brief, the State addressed the claim on the merits, see Resp. Ex. G at 19-27, and therefore, the appellate court may have affirmed Highsmith's conviction based on the State's

---

[5] James Terence Miller, Highsmith's appellate counsel, died in an automobile accident on March 25, 2013, see http://www.legacy.com/obituaries, which was well after mandate issued on July 27, 2012, see Resp. Ex. J.

argument. If the appellate court addressed the merits, the state court's adjudication of this claim is entitled to deference under AEDPA. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor was the state court's adjudication based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Accordingly, Highsmith is not entitled to relief on the basis of this claim.

Even assuming that the state court's adjudication of this claim is not entitled to deference, and that the claim presents a sufficiently exhausted issue of federal constitutional dimension,[6] Highsmith's claim is without merit because the State presented ample evidence to support Highsmith's conviction for aggravated battery. The Due Process Clause of the Fourteenth Amendment requires the State to prove each element of the offense charged beyond a reasonable doubt. Thompson v. Nagle, 118 F.3d 1442, 1448 (11th Cir. 1997) (citing Jackson v. Virginia, 443 U.S. 307, 314 (1979)). In reviewing the sufficiency of the evidence, "this court must presume that conflicting inferences to be drawn from the evidence were resolved by the jury in favor of the State." Thompson, 118 F.3d at 1448 (citing Machin v. Wainwright, 758 F.2d

---

[6] See Response at 5-8.

1431, 1435 (11th Cir. 1985)). Jackson v. Virginia "provides the federal due process benchmark for evidentiary sufficiency in criminal cases." Williams v. Sec'y for Dep't of Corr., 395 F. App'x 524, 525 (11th Cir. 2010) (per curiam) (citing Green v. Nelson, 595 F.3d 1245, 1252-53 (11th Cir. 2010)). In accordance with this authority, the relevant question is whether any rational jury, after viewing the evidence in the light most favorable to the prosecution, could have found the essential elements of the charged offense beyond a reasonable doubt. Jackson, 443 U.S. 319.

Under Florida law, a simple battery becomes an aggravated battery when a person intentionally or knowingly causes great bodily harm or uses a deadly weapon. See McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1239 n.5 (11th Cir. 2003) (quotations omitted). Florida Statutes section 784.045 provides that "a person commits aggravated battery who, in committing battery: 1. intentionally or knowingly causes great bodily harm, permanent disability, or permanent disfigurement; or 2. uses a deadly weapon. See Fla. Stat. § 784.045(1)(a) (capitalization omitted). As previously stated, the State charged Highsmith with subsection one of the statute as follows.

> NICHOLAS MCKENZIE HIGHSMITH on or between
> March 12, 2010 and March 13, 2010, in the
> County of Duval and the State of Florida,
> knowingly committed a battery upon S.M., by
> actually and intentionally touching or
> striking S.M. against her will and in
> committing the said battery intentionally or
> knowingly caused great bodily harm, permanent

16

> disability or permanent disfigurement,
> contrary to the provisions of Section
> 784.045(1)(a)1, Florida Statutes.

See Resp. Ex. C at 26, Amended Information, Count 4. Thus, the

State was required to present evidence of a touching or striking of

the victim against her will, and in the course thereof, that

Highsmith intentionally or knowingly caused great bodily harm,

permanent disability or permanent disfigurement. At trial, the

court instructed the jury as follows:

> Next is Count 4, aggravated battery. In
> order to prove the crime of aggravated
> battery, the State has to prove the following
> two elements beyond a reasonable doubt. The
> first element is a definition of battery.
>
> Then Nicholas McKenzie Highsmith
> intentionally caused bodily harm to Sherry
> McClanahan. Two, Nicholas McKenzie Highsmith
> in committing the battery intentionally or
> knowingly caused great bodily harm, permanent
> disability or permanent disfigurement to
> Sherry McClanahan.

Tr. at 456.

The record reflects the following relevant facts. According to

Juleo Patterson, a night auditor for the Casa Marina Hotel, the

victim arrived at the hotel "somewhere around" 5:00 to 6:00 a.m. on

the morning of March 13, 2010. Id. at 43. Patterson described the

victim as a "somewhat short, white lady, short cut hair, blondish

brownish hair" with "no pants on" and "a big piece of meat hanging

out of her mouth." Id. at 40. He testified that the victim "was

beat up pretty bad," id. at 41, and told him she had been raped,

id. at 40. First responder Corporal Lawrence Smith testified that

he was dispatched to the scene that Sunday morning at 6:06 a.m. Id.

at 57. Smith described the victim's appearance.

> She was -- she was wearing a long sleeve,
> I think an orange and black striped shirt,
> kind of a tighter shirt. Nothing underneath.
> She was completely naked from the waist down.
> She was visibly distraught and visibly
> injured. She was hurt tremendously and you
> could see it was very, very much on her face
> that she had been beat[en] by something.
>
> ....
>
> It was -- it was -- it was quite traumatic for
> myself to see. It was a shock to see the
> condition she was in.
>
> ....
>
> It was a piece of skin that was hanging out of
> her mouth that was kind of dangling as she was
> trying to speak. It was -- blood was kind of
> dropping -- dripping out of the dangling skin
> and it was pretty -- to say the least pretty
> gross. It was pretty shocking.
>
> ....
>
> She was very incoherent. She -- we attributed
> that to her possibly having a broken jaw. She
> had very limited movement of her jaw when she
> was speaking to us and she was doubled over in
> pain and very traumatized.

Id. at 58-59. On cross-examination, Smith stated he dispatched a

"BOLO" (be on the lookout) for a possible suspect based on

information the victim provided at the scene: a middle-aged white

male with short hair wearing a ball cap on the beach." Id. at 76.

18

Officer Paul Watkins testified that the victim spent almost two months in the hospital recovering from her injuries. Id. at 83.

According to the State's witnesses at trial, Highsmith and a group of friends and/or acquaintances partied at Gregory Baker's house in Middleburg and then went to Jacksonville Beach in the late evening of March 12th and into the early morning hours of March 13, 2010, to see the sunrise. Id. at 165-67, 175, 213, 221, 226-27, 248. The group consisted of Highsmith and three couples: Gregory Baker and Dominique Fanelle; Alexander Shea Hood and Carol Ann Rogers; and Robert (Bobby) View and Julia Branson. Id. at 166, 167. According to Baker, Hood drove his Jeep Cherokee and parked in the Jacksonville Beach pier parking lot near the Casa Marina Hotel; everyone went in separate directions: Baker and Fanelle walked towards the pier and onto the beach; Hood and Rogers walked onto the beach; and View and Branson stayed in the back of Hood's Jeep in the trunk space. Id. at 168-69, 180, 181, 187. Baker testified that he saw Highsmith with a drunk, staggering, middle-aged blonde five-foot woman, and they were walking over the beach access bridge towards the beach with their arms around each other. Id. at 169-72. According to Baker, Highsmith was the last one to arrive back to the car, and everyone was waiting on him. Id. at 172-73. Baker testified that Highsmith, who was carrying a black purse, "came running and said he had to -- we had to leave quickly because she was going to call the cops." Id. at 172, 188. Baker stated that

Highsmith threw the purse out of the car window on the way home. Id. at 173.

Next, Julia Branson testified that she does not "personally" know Highsmith and saw him for the first time at Baker's house on the evening of March 12, 2010. Id. at 200. Branson stated that the group headed to Jacksonville Beach at about 3:30 a.m. Id. at 206. According to Branson, the three couples and Highsmith parted ways at the pier parking lot; she heard Highsmith say that he was going to get him "some" at the beach. Id. at 207. Branson testified that she and View later saw Highsmith "[a]bout two cars over" with a woman Branson described as middle-aged, medium height, small stature, blonde, drunk, "scraggly looking" and "looked like she peed herself." Id. at 208, 218. Branson affirmed that she thought it was unusual that Highsmith was with this woman so Branson "kind of said something to [her] boyfriend [(Bobby View)] and then we were just kind of making fun of him a little bit because she was so old." Id. at 208, 210. Branson did not know where Highsmith went after that observation. Id. at 208. Branson testified that she later saw Highsmith "getting into the car in a hurry" and saying "[s]omething like let's like go fast or go, go, go or something like that" because he told everybody that he had stolen the lady's purse and took her bottle. Id. at 209. Branson said they left the beach when the sun was starting to rise at 6:00 or 7:00 a.m. Id. at 213. According to Branson, Highsmith said he had "hooked up with

[the older woman]." Id. at 219, 223-24. Branson stated she "thought that they just had sex." Id. at 224. According to Branson, she did not "see" the purse "get thrown out," but "knew" it was thrown out of the car's window. Id. at 210.

Bobby View's version of the events was similar to Branson's account since View and Branson were dating and stayed together that morning at the pier parking lot. View testified that the group left Clay County for the beach between 2:30 and 3:30 a.m. Id. at 228. At the pier parking lot, View saw Highsmith with a woman "about five-foot three maybe" in her "late 40's, early 50's" who "had urinated on the front of her pants." Id. at 231, 232. View described Highsmith's interaction with the older woman in the parking lot:

> I just looked over at the lady and I looked over and he [(Highsmith)] had his arm around her. She had his arm -- her arm around his waist as well and it was kind of not much -- not much talking. I was getting ready to say something to them but I didn't, but there was not much talking involved. I just saw them kind of sitting there.
>
> . . . .
>
> When -- at the point where I noticed that she had urinated on herself I was getting ready to make a comment. Then I looked over and [(Highsmith)] kind of made a gesture like kind of mind your own business signal to cover mine, just, shh, don't say anything, so at that point we had just went to the other side of the car that was farthest away from him, so we couldn't really -- we couldn't see through -- couldn't see through the car and finished up the cigarette and then just hopped back in the car.

Id. at 231, 232. According to View, after that observation, he and Branson went to sleep in the Jeep; View later saw Highsmith at the Jeep ready to leave; Highsmith had a purse and a bottle of liquor and said "[w]e have to get out of here"; View did not remember why Highsmith said they had to leave; they left the beach at about 6:30 a.m.; Highsmith rummaged through the purse, and then the purse was "tossed out" of the car window on the way back home. Id. at 233-34, 242.

Next, Dominique Fanelle testified that she saw Highsmith with an older blonde woman; they were holding hands and walking towards the beach; and it appeared that she had urinated on herself. Id. at 249, 256. Fanelle stated that, as the group was ready to leave the pier parking lot, Highsmith came running back to the car with a purse and the bottle of liquor the woman had been carrying. Id. at 251, 258. According to Fanelle, Highsmith said "something about let's go home" and that he had "just got her purse and her bottle." Id. at 251. Fanelle testified that "[t]he sun came up" while they were on their way home. Id. at 250. Similarly, Carol Rogers testified that, when the group was ready to leave the parking lot, Highsmith ran up to the car with a purse and said he "just had sex with a lady and stole her purse and [we] got to get out of here." Id. at 263.

Jennifer Miller, a Florida Department of Law Enforcement (FDLE) DNA expert, affirmed that, in comparing Highsmith's DNA

sample to the FDLE face swab mixture, every single allele that belongs to Highsmith is represented in the face swab mixture. Id. at 282. Miller explained the statistics relating to the face swab mixture:

> The face swab obviously had better results and Nicholas Highsmith is included as a possible contributor to the mixed DNA profile. The percentage of unrelated individuals in the following populations who are expected to be excluded to that mixed DNA profile are Caucasian greater than 99 percent, African American greater than 99, southeastern Hispanic greater than 99.

Id. at 285.

Alexander Shea Hood, who was Highsmith's "bunk partner" in military school in 2007, testified for the defense. Id. at 304, 324. According to Hood, the group left the pier parking lot when "it was still dark," id. at 311; they arrived back in Clay County for sunrise, id. at 320; and Hood left his house for Savannah at 7:20 a.m., id. at 331. Highsmith testified at trial that he met the victim in the pier parking lot after she waved at him. Id. at 336. According to Highsmith, he and the victim "didn't do nothing more than make out that night." Id. He stated he "was a little bit intoxicated so [he was ] kissing kind of wildly, like on the neck, on the cheek, on the ear. . . . " Id. at 338. He denied having sexual intercourse with the victim, beating her, stealing her purse, and raping her. Id. at 338, 344. As to his DNA found on the victim's face, Highsmith explained that he has "some kind of gum

23

disease" that causes his gums to bleed "whenever something touches" them or "every time" he "suck[s] on something." Id. at 345. According to Highsmith, he did not know his gums were bleeding that night. Id. at 350.

After viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found Highsmith committed the aggravated battery. Thus, viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence to support the conviction for aggravated battery. Competent evidence of the elements of the offense was introduced at trial, and no due process violation occurred. The jury was entitled to believe the State witnesses' accounts of what happened on the morning in question. Additionally, the jury heard Highsmith's testimony during trial, and therefore was entitled to make its own determination as to what transpired on March 12-13, 2010. Given the record, the trial court did not err in denying Highsmith's motions for judgment of acquittal; the evidence was sufficient to justify the court's submitting the case to the jury; and the evidence was sufficient to support the conviction for aggravated battery. Therefore, Highsmith is not entitled to habeas relief as to ground one.

**B. Ground Two**

As ground two, Highsmith asserts that his Sixth Amendment right to confront witnesses was violated when the victim did not testify at trial. See Petition at 7. He states:

> The Sixth Amendment guarantees that "in all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witness or witnesses against him.["] Petitioner asserts that according to the state evidence code Chapter 90 (90.616/2d) a witness may not be excluded if the witness is in a criminal case the victim of the crime. The victim in this case is the only person with the knowledge of what happened to her the nite [sic] she was battered. Without testimony from the victim the State relied solely upon Petitioner's DNA to establish guilt. By the victim not standing trial the State violated the confrontation clause & Petitioner's Sixth Amendment right.

Id. Respondents argue that Highsmith did not present this issue on direct appeal, and thus Highsmith's claim has not been exhausted and therefore is procedurally barred. See Response at 15-16. In the Petition, Highsmith states that he did not exhaust his state remedies as to this issue because his counsel died. See Petition at 7. On this record, the Court agrees that Highsmith's Sixth Amendment claim has not been exhausted and is therefore procedurally barred since Highsmith failed to raise the claim in a procedurally correct manner. Highsmith has not shown either cause excusing the default or actual prejudice resulting from the bar. Moreover, he has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception.

Even assuming that Highsmith's claim is not procedurally barred, Highsmith is not entitled to relief. In the State's opening statement, the prosecutor told the jury that the victim would not testify at trial.

> We cannot fill in every gap in this sordid crime that that man committed. Sherry McClanahan will not come into this courtroom. She could not assist in any way in catching the man that did this to her. As homicide victims never come to this courtroom neither will Sherry McClanahan.

Tr. at 29. In closing argument, the prosecutor stated:

> I anticipate that [defense counsel] will get up and say to you that there is reasonable doubt in this case because Sherry McClanahan did not testify. You don't need her to find this defendant guilty. The evidence that was present[ed] to you speaks for her.

Id. at 385. The Confrontation Clause of the Sixth Amendment of the United States Constitution guarantees a defendant the right "to be confronted with the witnesses against him." U.S. Const. amend. VI; see Crawford v. Washington, 541 U.S. 36, 42 (2004) (citation omitted). This includes the right to cross-examine witnesses. See Pointer v. Texas, 380 U.S. 400, 406-07 (1965). In the instant action, it appears that Highsmith believes that the Confrontation Clause required the State to produce the victim to testify at trial. See Reply at 5-7. However, the Confrontation Clause prohibits the use of "testimonial hearsay" against a defendant to secure his conviction. Crawford, 541 U.S. at 53. Highsmith has not identified any testimonial hearsay that was used against him at

trial, where he did not have the opportunity to cross-examine the witness.

Highsmith also relies on Florida Statutes section 90.616(2)(d) to support his argument. Florida Statutes section 90.616 provides the rule of sequestration of witnesses as follows.

> (1) At the request of a party the court shall order, or upon its own motion the court may order, witnesses excluded from a proceeding so that they cannot hear the testimony of other witnesses except as provided in subsection (2).
>
> (2) **A witness may not be excluded if the witness is:**
>
>     . . . .
>
> (d) In a criminal case, **the victim of the crime**, the victim's next of kin, the parent or guardian of a minor child victim, or a lawful representative of such person, unless, upon motion, the court determines such person's presence to be prejudicial.

Fla. Stat. § 90.616 (emphasis added). The statute's subsection (2)(d) provides a state-law right for victims of crime, not defendants. See also art. 1, § 16, Fla. Const.; Rose v. State, 787 So.2d 786, 803-04 (Fla. 2001). Highsmith neither has standing nor any basis in law to assert that the victim's decision not to exercise her right to be present at trial violated his Sixth Amendment right. Highsmith is not entitled to habeas relief as to ground two.

## C. Ground Three

As ground three, Highsmith asserts that the Amended

Information was deficient because it was not sworn to by a material

witness. See Petition at 8. He states:

> A state court identified a material witness
> as, "a person who can give testimony no one
> else, or at least very few can give.["]
> Petitioner asserts that investigating Officer
> (P.F. [(Paul Frederick)] Corporal Watkins) is
> not a material witness. In the instant case,
> Detective Watkins collected DNA in the form of
> a swab in which he then gave to a crime lab
> analyst in the forensic biology section by the
> name of Jennifer Miller. This Jennifer Miller
> in turn identified the Petitioner as the
> contributer [sic]. It is clear that the
> investigating officer may be a material
> witness in some situations. However here that
> would not be the case since Jennifer Miller
> identified the Petitioner not Detective
> Watkins. The swab was not something that could
> be interpreted by Detective Watkins, and as
> such he has no importance except for possibly
> establishing a chain of evidence. Petitioner
> further asserts that the Information that
> states that Assistant State Attorney Alan S.
> Mizrahi ... certifies that testimony under
> oath has been received from the material
> "witness(es)" on Aug. 4, 2010. Petitioner was
> already in custody at the time of the
> Information and has been since July 12, 2010.

Id. Respondents argue that Highsmith did not present this issue on

direct appeal, and thus Highsmith's claim has not been exhausted

and therefore is procedurally barred. See Response at 17-18. The

Court agrees that Highsmith's claim has not been exhausted and is

therefore procedurally barred since Highsmith failed to raise the

claim in a procedurally correct manner. Highsmith has not shown

either cause excusing the default or actual prejudice resulting from the bar. Moreover, he has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception.

Even assuming that Highsmith's claim is not procedurally barred, Highsmith is not entitled to relief. This claim presents an issue purely of state law that is not cognizable on federal habeas review. The purpose of a federal habeas proceeding is review of the lawfulness of Highsmith's custody to determine whether that custody is in violation of the Constitution or laws or treaties of the United States. Coleman v. Thompson, 501 U.S. 722 (1991). Highsmith's conviction and sentence do not violate the United States Constitution.

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States. For a defective Information to be a cognizable claim in a federal habeas corpus action, the charging document must be so defective that it deprives the court of jurisdiction. DeBenedictis v. Wainwright, 674 F.2d 841, 842 (11th Cir. 1982) (citations omitted) ("The sufficiency of a state indictment or information is not properly the subject of federal habeas corpus relief unless the indictment or information

is so deficient that the convicting court is deprived of jurisdiction."). Under Florida law, the state circuit courts have jurisdiction over all felonies. <u>See</u> Fla. Stat. § 26.012(2)(d). Moreover, the Amended Information in Highsmith's case named Highsmith; described the dates and location of the offense; stated the statutory basis and properly set forth the elements of aggravated battery; it therefore met the minimum requirements for invoking the jurisdiction of the state circuit court. <u>See</u> Resp. Ex. C at 26. Additionally, the Amended Information contained the required sworn oath of the Assistant State Attorney, certifying that the allegations in the Amended Information "are based upon facts that have been sworn to as true, and which, if true, would constitute the offense therein charged," that the prosecution "is instituted in good faith," and "that testimony under oath has been received from the material witness(es) for the offense." <u>Id.</u> Such a sworn oath by the prosecutor that he received testimony under oath from the material witness(es) for the offense is sufficient pursuant to applicable Florida law. <u>See</u> Fla. R. Crim. P. 3.140(g).[7]

---

[7] Florida Rule of Criminal Procedure 3.140(g) provides:

> Signature, Oath, and Certification; Information. An information charging the commission of a felony shall be signed by the state attorney, or a designated assistant state attorney, under oath stating his or her good faith in instituting the prosecution and certifying that he or she has received testimony under oath from the material witness or witnesses for the offense.

Undoubtedly, the trial court had subject matter jurisdiction over Highsmith's case since the Amended Information charged him with aggravated battery in violation of Florida Statutes section 784.045(1)(a)1. See Resp. Ex. C at 26. Thus, ground three does not warrant federal habeas relief.

### D. Ground Four

As ground four, Highsmith asserts that the jury's verdict was "uncertain." Petition at 10. He explains:

> Petitioner was found not guilty on count one attempted first degree felony murder and count two sexual battery. However, the jury convicted the Petitioner of count three's lesser included petit theft and count four aggravated battery. The Petitioner accuses the State of leading the jury into a state of uncertainty by saying that the presence of Petitioner's DNA on the victim's face was "beaten there by his (Petitioner's) fist." Petitioner asserts that this statement is no more than a hypothesis with no supporting evidence. In fact this DNA only identified the Petitioner as being the contributer [sic]. The type of DNA (i.e. saliva, hair, etc.) is otherwise unknown. Petitioner then testified on his own behalf to state to the jury that the presence of his DNA on the victim's face was through amorous contact. This same amorous contact was seen and attested to by witnesses at trial. Petitioner asserts that due to [the] state attorney's falsified hypothesis the jury was uncertain and convicted the Petitioner of aggravated battery after being instructed by Petitioner's counsel during jury selection that "in this case if you find Petitioner not guilty on one count he must be found not guilty on all counts."

Id. Respondents argue that Highsmith did not present this issue on direct appeal, and thus Highsmith's claim has not been exhausted

and therefore is procedurally barred. <u>See</u> Response at 19. The Court agrees that Highsmith's claim has not been exhausted and is therefore procedurally barred since Highsmith failed to raise the claim in a procedurally correct manner. Highsmith has not shown either cause excusing the default or actual prejudice resulting from the bar. Moreover, he has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception.

Even assuming that Highsmith's claim is not procedurally barred, his claim is, nevertheless, without merit. The remarks at issue were not improper.[8] The Eleventh Circuit has stated:

> "To find prosecutorial misconduct, a two-pronged test must be met: (1) the remarks must be improper, and (2) the remarks must prejudicially affect the substantial rights of the defendant." <u>United States v. Eyster</u>, 948 F.2d 1196, 1206 (11th Cir. 1991). To satisfy the second prong, the prosecutor's improper remarks must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." <u>Darden v. Wainwright</u>, 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986) (quotation marks omitted); <u>see also</u> <u>Romine v. Head</u>, 253 F.3d 1349, 1366 (11th Cir. 2001) . . . .

<u>Conner v. GDCP Warden</u>, 784 F.3d 752, 769 (11th Cir. 2015), <u>cert</u>. <u>denied</u>, 136 S.Ct. 1236 (2016). In determining whether arguments are sufficiently egregious to result in the denial of due process, we have considered the statements in the context of the entire

---

[8] <u>See</u> Tr. at 382-83; 431; 440; <u>see</u> <u>also</u> Reply at 8-10.

proceeding, including factors such as the trial court's instructions; whether the remarks were isolated, ambiguous, or unintentional; and whether there was a contemporaneous objection by defense counsel. See id. (citations omitted). Attorneys are permitted wide latitude in their closing arguments, and the record reflects that the trial judge instructed the jury that the attorneys were not witnesses in the case, and therefore their statements and arguments were not evidence. See Tr. at 14, 377; Hammond v. Hall, 586 F.3d 1289, 1334 (11th Cir. 2009); Brown v. Jones, 255 F.3d 1273, 1280 (11th Cir. 2001) (stating that "jurors are presumed to follow the court's instructions."). After reviewing the record, viewing the remarks in the context of the trial as a whole, and assessing their "probable impact" on the jury, see United States v. Hill, 643 F.3d 807, 849 (11th Cir. 2011), this Court is convinced that the prosecutors' comments, during closing argument, did not result in a due process violation.[9] Highsmith is not entitled to habeas relief as to ground four.

---

[9] The reversal of a conviction is warranted only when improper comments by a prosecutor have "'so infected the trial with unfairness as to make the resulting conviction [or sentence] a denial of due process.' Darden v. Wainwright, 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974))." Parker v. Head, 244 F.3d 831, 838 (11th Cir. 2001).

## VIII. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Highsmith seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Highsmith "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon

consideration of the record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1. The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE.**

2. The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3. If Highsmith appeals the denial of the Petition, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4. The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 23rd day of September, 2016.

MARCIA MORALES HOWARD
United States District Judge

sc 9/21
c:
Nicholas McKenzie Highsmith
Counsel of Record

35